A. Raymond Hamrick, III, (State Bar No. 93821)  ORIGINAL
Martin J. Barab (State Bar No. 47419)
**HAMRICK & EVANS, LLP**
111 Universal Hollywood Drive, Suite 2200
Universal City, California 91608
Telephone:    (818) 763-5292
Facsimile:    (818) 763-2308

Attorneys for Plaintiff and Counter-
Defendant HANNIBAL PICTURES, INC., a
California Corporation

**BROWNE WOODS GEORGE LLP**
Eric M. George (State Bar No. 166403)
Gene Williams (State Bar No. 211390)
2121 Avenue of the Stars, 24th Floor
Los Angeles, California 90067
Tel. (310) 274-7100 / Fax (310 275-5697

Attorneys for Defendants SONJA
PRODUCTIONS LLC, SONJA TREMONT-MORGAN,
and Counter-Claimant SONJA PRODUCTIONS
LLC

FILED
CLERK, U.S. DISTRICT COURT

MAY 1 1 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

**NOTE CHANGES MADE BY THE COURT.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| HANNIBAL PICTURES, INC., a California Corporation, | Case No.: CV06-1814 GHK (VBKx) |
| Plaintiff, | Assigned for all Purposes to Judge George H. King |
| v. | [Removed from Los Angeles County Superior Court, Case BC348012] |
| SONJA PRODUCTIONS, LLC, a Delaware limited liability company; SONJA TREMONT-MORGAN, and individual; JOHN ADAMS MORGAN, an individual; and DOES 1 through 10, inclusive, | [PROPOSED] PRE-TRIAL CONFERENCE ORDER |
| Defendants. | PRE-TRIAL DATE: May 11, 2009 TIME: 4:30 p.m. CTRM: 650 |
| AND RELATED CROSS-ACTION. | TRIAL DATE:  May 19, 2009 TIME:  9:30 a.m. CTRM:  650 |

Following pretrial proceedings, pursuant to Rule 16 of the
Federal Rules of Civil Procedure and Local Rule 16, IT IS SO ORDERED:

-1-

HAMRICK & EVANS, LLP

1. **THE PARTIES:**

The parties are:  Plaintiff Hannibal, Inc. dba Hannibal Pictures and Defendants Sonja Productions LLC and Sonja Tremont-Morgan.  Each of these parties has appeared.  All parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:  Hannibal, Inc. dba Hannibal Pictures' First Amended Complaint and Sonja Productions, LLC's Answer to Hannibal, Inc. dba Hannibal Pictures' First Amended Complaint, ~~and Hannibal, Inc dba Hannibal Pictures' Answer to Sonja Productions, LLC's Counterclaim.~~

2. **JURISDICTION AND VENUE:**

Federal jurisdiction and venue are invoked upon the grounds:  The action was removed by Sonja Productions LLC based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(b).  The facts requisite to federal jurisdiction are admitted.

3. **TRIAL ESTIMATE:**

The trial is estimated to take four (4) trial days.

4. **JURY TRIAL:**

The trial is to be a jury trial.  At least five (5) court days prior to the trial date, *The parties* ~~each party~~ shall file *joint proposed* ~~and serve by e-mail,~~ ~~fax, or personal delivery: (a) proposed~~ *(a)* jury instructions ~~as required~~ *as* *directed by the court in its 4-1-09 order* ~~by L.R. 51-1~~ and (b) any special questions requested to be asked on voir dire.

5. **ADMITTED FACTS:**

The following facts are admitted and require no proof:

-2-

1. Hannibal, Inc. dba Hannibal Pictures is a corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.

1.   Sonja Productions, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

2.   Sonja Tremont-Morgan is the President and Chairman of Sonja Productions, LLC.

3.   Sonja Tremont-Morgan was a member of the board of directors of Sonja Productions, LLC

4.   Sonja Tremont-Morgan is a ~~resident~~ citizen of the State of New York.

5.   Sonja Tremont-Morgan was the wife of John Adams Morgan.

6.   W. Peter Iliff wrote the motion picture screenplay "Fast Flash to Bang Time."

7.   W. Peter Iliff received screen credit on such films as "Point Break," "Patriot Games," and "Varsity Blues."

8.   Hannibal, Inc. dba Hannibal Pictures represented to Sonja Tremont-Morgan that it owned an option to purchase all rights to the theatrical motion picture entitled "Fast Flash to Bang Time."

9.   On or about January 9, 2006, Sonja Tremont-Morgan signed a deal memorandum on behalf of Sonja Productions, LLC with Hannibal, Inc. dba Hannibal Pictures, with respect to "Fast Flash to Bang Time."

10.   A condition precedent of the deal memorandum was that the parties receive written confirmation that John Travolta agreed to play the male lead.

11.   On January 25, 2006, Sonja Productions, LLC signed an amendment to the deal memorandum with Hannibal, Inc. dba Hannibal Pictures with respect to "Fast Flash to Bang Time."

12.   On or about January 31, 2006, Sonja Tremont-Morgan met with Richard Rionda del Castro.

13.   Sonja Productions, LLC did not provide proof of funds or funds for "Fast Flash to Bang Time."

14.   Sonja Productions, LLC stopped payment on a check to Hannibal, Inc. dba Hannibal Pictures.

15.   The deal with John Travolta never closed.

**6.   STIPULATED FACTS:**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:  None.

**7.   CLAIMS AND DEFENSES OF THE PARTIES:**

This section of the pre-trial conference order is intended to apprise the Court in advance of trial of the claims and defenses to be presented at the time of trial.  The parties will be precluded from presenting claims or defenses not set forth in this Order, in the manner required by this Order.  Only claims or defenses contained in the First Amended Complaint and Answer thereto and Counterclaim and Answer thereto should be included in this Pretrial Order.  If a party chooses to abandon a claim or defense previously alleged, it

HAMRICK & EVANS, LLP

-4-

may do so by not including it in this Order.  The following format must be employed:

**Plaintiff**:

Hannibal, Inc. dba Hannibal Pictures' claims include Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Fraud, Negligent Misrepresentation, Unfair Business Practices and Alter Ego Liability:

1.   **Breach of Contract**:

To establish a claim for breach of contract, a Plaintiff must establish the following: (1) a contract, (2) Plaintiff's performance or excuse of nonperformance, (3) Defendant's breach, and (4) damage to Plaintiff.  Walsh v. West Valley Mission Community College Dist., 66 Cal.App.4th 1532, 1545 (1998); Troyk v. Farmers Group, Inc., 171 Cal.App.4th 1305, 1352 (2009).

The ultimate facts required to establish this claim are:

1.   There was a valid contract between Hannibal, Inc. dba Hannibal Pictures, Sonja Productions, LLC; in this case: the Agreement executed on or about January 9, 2006 and the Amendment executed on or about January 25, 2006.

2.   Hannibal, Inc. dba Hannibal Pictures performed its obligations under the contract: Hannibal, Inc. dba Hannibal Pictures provided written confirmation of the male lead, John Travolta on or before February 28, 2006.

3.   Sonja Productions, LLC and Sonja Tremont-Morgan breached one or more of the following provisions of the Agreement and the

Amendment:

(i) Paragraph 3 of the Agreement, Financing:  "[Sonja Productions, LLC and Sonja Tremont-Morgan] will cash flow 100% of the approved production budget (exhibit 'A') of the Film, currently estimated at USD $18,500,000.00 and will provide 60% equal to USD $11,100,000.00 as equity ('Equity Amount.')."

(ii) Paragraph 4 of the Agreement, Compensation: "As and for [Hannibal, Inc. dba Hannibal Pictures'] efforts and assistance in development and production of the Property, [Sonja Productions, LLC and Sonja Tremont-Morgan] shall pay the producer fee [of Eight Hundred Thousand Dollars ($800,000.00)] and USD $52,094.00 for reimbursement of all of [Hannibal, Inc. dba Hannibal Pictures'] expenses, payable upon exercise of the Underlying Option."

(4) Sonja Productions, LLC and Sonja Tremont-Morgan's breaches of contract caused damage to Hannibal, Inc. dba Hannibal Pictures and Richard Rionda del Castro.  In this case, Hannibal, Inc. dba Hannibal Pictures' out of pocket costs and expenses damages total Fifty-Two Thousand Ninety Four Dollars and Forty-Six Cents ($52,094.46). Hannibal, Inc. dba Hannibal Pictures' share of a Florida state tax rebate which it would have appreciated had "Fast Flash to Bang Time" been produced as planned in the state of Florida, which resulted in damages totaling Four Hundred Thousand Dollars ($400.000.00). Hannibal, Inc. dba Hannibal Pictures' lost international and domestic sales agency/distribution fees damages total Four Million Three Hundred Thousand Dollars ($4,300,000.00).  Finally, pursuant to

assignment, Hannibal, Inc. dba Hannibal Pictures' was due a budgeted producer's fee of Eight Hundred Thousand Dollars ($800,000.00) which was not realized and thus resulted in Eight Hundred Thousand Dollars ($800,000.00) in damages.  The sum total of damages for Hannibal, Inc. dba Hannibal Pictures is Five Million Five Hundred Fifty-Two Thousand and Ninety-Four Dollars and Forty-Six Cents ($5,552,094.46).

**2.**   **Breach of Implied Covenant of Good Faith and Fair Dealing:**

To establish a claim for breach of implied covenant of good faith and fair dealing involves unfair dealing in the form of a conscious and deliberate act that unfairly frustrates the agree common purpose of the contract and disappoints the reasonable expectations of the other party to the contract.  Celador Int'l Ltd. v. Walt Disney Co., 347 F.Supp.2d 846, 852 (C.D. Cal. 2004 (citing Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1394 (1990)).

The ultimate facts required to establish this claim are:

(1) The Contract and Amendment contain an implied covenant of good faith and fair dealing that the parties would not do anything to deprive one another of the benefits of the agreement.

(2) Sonja Productions LLC and Sonja Tremont-Morgan materially breached the implied covenant of good faith and fair dealing by, among other things: (a) failing and refusing to provide cash flow financing for the picture; (b) failing and refusing to provide equity funds for the project; (c) failing and refusing to provide proof of funds to John Travolta's agent; (d) failing to reimburse Hannibal,

HAMRICK & EVANS, LLP

Inc. dba Hannibal Pictures' prior expenses, and stopping payment on the check issued to reimburse those expenses; and (e) failing and refusing to pay Hannibal, Inc. dba Hannibal Pictures fees to which it is entitled under the terms of the Contract and the Amendment.

**3.   Fraud:**

To establish a claim for fraud, a Plaintiff must establish the following: (1) a false representation of a material fact (or, in some cases, an opinion) susceptible of knowledge, (2) made with knowledge of falsity or without sufficient knowledge on the subject to warrant a representation, (3) with the intent to induce the person to whom it is made to act upon it; and such person must (4) act in reliance upon the representation (5) to his damage.  *See* South Tahoe Gas Co. v. Hoffman Land Improv. Co., 25 Cal.App.3d 750, 765 (1972); Balfour, Guthrie & Co. v. Hansen, 227 Cal.App.2d 173, 192-193 (1964).

The ultimate facts required to establish this claim are:

(1) Sonja Productions LLC and Sonja Tremont-Morgan made numerous misrepresentations to Hannibal, Inc. dba Hannibal Pictures regarding "Fast Flash to Bang Time" including, but not limited to: (a) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would provide cash flow financing for the project; (b) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would provide equity funds for the project; (c) the representation that the necessary funds were available at City National Bank and ready to be transferred to a production account; (d) the representation that Sonja Productions LLC and Sonja Tremont-Morgan

HAMRICK & EVANS, LLP

would provide proof of funds for the project; (e) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would immediately begin cash flowing the picture and fund the escrow account for John Travolta; (f) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would reimburse Hannibal, Inc. dba Hannibal Pictures' prior expenses in the amount of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); (g) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would pay Hannibal, Inc. dba Hannibal Pictures fees as set forth in the Contract and the Amendment; (h) the representation that Sonja Productions, LLC had cash funding to invest in five (5) motion pictures in the range of Twenty-Five Million Dollars ($25,000,000.00) to Fifty Million Dollars ($50,000,000.00) for each film; (i) the representation that John Adams Morgan, son of the founder of investment bank Morgan Stanley, was in charge of finance and banking activities for Sonja Productions, LLC; (j) the representation to various entertainment trade publications that Sonja Productions, LLC and Sonja Tremont-Morgan had the funding necessary to finance multiple motion pictures; and (k) the representation to various motion picture producers that Sonja Productions, LLC and Sonja Tremont-Morgan had the funding necessary to finance multiple motion pictures.

(2) Sonja Productions LLC and Sonja Tremont-Morgan knowingly made the above-listed representations and knew at the time said representations were made that they were false.

(3) Sonja Productions LLC and Sonja Tremont-Morgan intended to

induce Hannibal, Inc. dba Hannibal Pictures to rely upon its knowingly false representations.

(4) Hannibal, Inc. dba Hannibal Pictures justifiably relied on Sonja Productions LLC and Sonja Tremont-Morgan's knowingly false statements by, among other things, entering into the Contract and the Amendment, incurring costs and expenses in furtherance of the project, and making representations and commitments to John Travolta to secure his service for the project.

(5) Sonja Productions LLC and Sonja Tremont-Morgan's false and fraudulent representations caused damage to Hannibal, Inc. dba Hannibal Pictures and Richard Rionda del Castro.  In this case, Hannibal, Inc. dba Hannibal Pictures' out of pocket costs and expenses damages total Fifty-Two Thousand Ninety Four Dollars and Forty-Six Cents ($52,094.46).  Hannibal, Inc. dba Hannibal Pictures' share of a Florida state tax rebate which it would have appreciated had "Fast Flash to Bang Time" been produced as planned in the state of Florida, which resulted in damages totaling Four Hundred Thousand Dollars ($400.000.00).  Hannibal, Inc. dba Hannibal Pictures' lost international and domestic sales agency/distribution fees damages total Four Million Three Hundred Thousand Dollars ($4,300,000.00). Finally, pursuant to assignment, Hannibal, Inc. dba Hannibal Pictures' was due a budgeted producer's fee of Eight Hundred Thousand Dollars ($800,000.00) which was not realized and thus resulted in Eight Hundred Thousand Dollars ($800,000.00) in damages.  The sum total of damages for Hannibal, Inc. dba Hannibal Pictures is Five

1  Million Five Hundred Fifty-Two Thousand and Ninety-Four Dollars and

2  Forty-Six Cents ($5,552,094.46).

3      **4.  Negligent Misrepresentation:**

4      To establish a claim for negligent misrepresentation, a

5  Plaintiff must establish the following: (1) misrepresentation of a

6  past existing material fact, (2) without reasonable grounds for

7  believing it to be true, (3) with intent to induce another's reliance

8  on the misrepresentation, (4) ignorance of the truth and justifiable

9

10  reliance on the misrepresentation by the party to whom it was

11  directed, and (5) resulting damage.  Lincoln Alameda Creek v. Cooper

12  Industries Inc., 829 F.Supp. 325, 330 (N.D. Cal. 1992) (citing Fox v.

13  Pollack, 181 Cal.App.3d 954 (1986)).

14      The ultimate facts required to establish this claim are:

15

16      (1) Sonja Productions LLC and Sonja Tremont-Morgan made numerous

17  misrepresentations to Hannibal, Inc. dba Hannibal Pictures regarding

18  "Fast Flash to Bang Time" including, but not limited to: (a) the

19  representation that Sonja Productions LLC and Sonja Tremont-Morgan

20  would provide cash flow financing for the project; (b) the

21  representation that Sonja Productions LLC and Sonja Tremont-Morgan

22  would provide equity funds for the project; (c) the representation

23  that the necessary funds were available at City National Bank and

24  ready to be transferred to a production account; (d) the

25  representation that Sonja Productions LLC and Sonja Tremont-Morgan

26  would provide proof of funds for the project; (e) the representation

27  that Sonja Productions LLC and Sonja Tremont-Morgan would immediately

28

HAMRICK & EVANS, LLP

-11-

begin cash flowing the picture and fund the escrow account for John Travolta; (f) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would reimburse Hannibal, Inc. dba Hannibal Pictures' prior expenses in the amount of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); (g) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would pay Hannibal, Inc. dba Hannibal Pictures fees as set forth in the Contract and the Amendment; (h) the representation that Sonja Productions, LLC had cash funding to invest in five (5) motion pictures in the range of Twenty-Five Million Dollars ($25,000,000.00) to Fifty Million Dollars ($50,000,000.00) for each film; (i) the representation that John Adams Morgan, son of the founder of investment bank Morgan Stanley, was in charge of finance and banking activities for Sonja Productions, LLC; (j) the representation to various entertainment trade publications that Sonja Productions, LLC and Sonja Tremont-Morgan had the funding necessary to finance multiple motion pictures; and (k) the representation to various motion picture producers that Sonja Productions, LLC and Sonja Tremont-Morgan had the funding necessary to finance multiple motion pictures.

(2) Sonja Productions LLC and Sonja Tremont-Morgan knowingly made the above-listed representations and knew at the time said representations were made that they were false.

(3) Sonja Productions LLC and Sonja Tremont-Morgan intended to induce Hannibal, Inc. dba Hannibal Pictures to rely upon its knowingly false representations.

(4) Hannibal, Inc. dba Hannibal Pictures justifiably relied on Sonja Productions LLC and Sonja Tremont-Morgan's knowingly false statements by, among other things, entering into the Contract and the Amendment, incurring costs and expenses in furtherance of the project, and making representations and commitments to John Travolta to secure his service for the project.

(5) Sonja Productions LLC and Sonja Tremont-Morgan's false and fraudulent representations caused damage to Hannibal, Inc. dba Hannibal Pictures and Richard Rionda del Castro.  In this case, Hannibal, Inc. dba Hannibal Pictures' out of pocket costs and expenses damages total Fifty-Two Thousand Ninety Four Dollars and Forty-Six Cents ($52,094.46).  Hannibal, Inc. dba Hannibal Pictures' share of a Florida state tax rebate which it would have appreciated had "Fast Flash to Bang Time" been produced as planned in the state of Florida, which resulted in damages totaling Four Hundred Thousand Dollars ($400.000.00).  Hannibal, Inc. dba Hannibal Pictures' lost international and domestic sales agency/distribution fees damages total Four Million Three Hundred Thousand Dollars ($4,300,000.00).  Finally, pursuant to assignment, Hannibal, Inc. dba Hannibal Pictures' was due a budgeted producer's fee of Eight Hundred Thousand Dollars ($800,000.00) which was not realized and thus resulted in Eight Hundred Thousand Dollars ($800,000.00) in damages.  The sum total of damages for Hannibal, Inc. dba Hannibal Pictures is Five Million Five Hundred Fifty-Two Thousand and Ninety-Four Dollars and Forty-Six Cents ($5,552,094.46).

## 5.    Unfair Business Practices:

Unfair Business Practices are recognized as false and misleading representations within the meaning of California Business & Professions Code § 17200, et seq.  Section 17200, et seq. is designed to protect consumers against fraud and deceit as well as protect competitors.  It is broadly interpreted to bar all wrongful business activities in any context in which they appear.  People v. Collar Rent-A-Car Systems, Inc., 211 Cal.App.3d 119 (1989).  The remedies and penalties for false and misleading representations under section 17200, et seq. are cumulative to those imposed under the other laws. People ex rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal.App.4th 508 (2002).

The ultimate facts required to establish this claim are:

Sonja Productions LLC and Sonja Tremont-Morgan made numerous misrepresentations to Hannibal, Inc. dba Hannibal Pictures regarding "Fast Flash to Bang Time" including, but not limited to all: (a) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would provide cash flow financing for the project; (b) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would provide equity funds for the project; (c) the representation that the necessary funds were available at City National Bank and ready to be transferred to a production account; (d) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would provide proof of funds for the project; (e) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would immediately

-14-

begin cash flowing the picture and fund the escrow account for John Travolta; (f) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would reimburse Hannibal, Inc. dba Hannibal Pictures' prior expenses in the amount of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); (g) the representation that Sonja Productions LLC and Sonja Tremont-Morgan would pay Hannibal, Inc. dba Hannibal Pictures fees as set forth in the Contract and the Amendment; (h) the representation that Sonja Productions, LLC had cash funding to invest in five (5) motion pictures in the range of Twenty-Five Million Dollars ($25,000,000.00) to Fifty Million Dollars ($50,000,000.00) for each film; and (i) the representation that John Adams Morgan, son of the founder of investment bank Morgan Stanley, was in charge of finance and banking activities for Sonja Productions, LLC.

## 6.   Alter Ego Liability

To establish a claim for alter ego liability, a Plaintiff must establish the following: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) if the acts giving rise to liability are treated as those of the corporation alone, an inequitable result will follow.  See Minifie v. Rowley, 187 Cal.481, 487 (1921); Robbins v. Blecher, 52 Cal.App.4th 886, 892 (1997); Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal.App.2d 825, 837 (1962).

California courts have identified a number of relevant factors to the "unity of interest" element, including the following pertinent

factors: treatment by an individual of the assets of the corporation as his/her own; failure to maintain an arm's length relationship between the individual and the corporation; the holding out by an individual that he/she is personally liable for the debts of the corporation.   See Associated Vendors, Inc. v. Oakland Meat Co., supra, 210 Cal.App.2d at 838-840.

The second element, the "inequitable result" prong, does not depend on the presence of actual fraud by the alter ego; rather an inequitable result is sufficient.   See Linco Services, Inc. v. DuPont, 239 Cal.App.2d 841, 844 (1966); Talbot v. Fresno-Pacific Corp., 181 Cal.App.2d 425, 431 (1960).

The ultimate facts required to establish this claim are:

(1) Sonja Tremont-Morgan treated the assets of Sonja Productions, LLC as her own assets; Sonja Productions, LLC was a very closely held corporation with few shareholders, Sonja Tremont-Morgan being the largest shareholder; Sonja Tremont-Morgan mortgaged her home in Colorado to finance motion pictures through Sonja Productions, LLC; and Sonja Tremont-Morgan made numerous representations that John Adams Morgan was responsible for the financing behind Sonja Productions, LLC.

(2)  Sonja Tremont-Morgan made knowingly false representations to Hannibal, Inc. dba Hannibal Pictures; Hannibal, Inc. dba Hannibal Pictures reasonably relied upon the false representations of Sonja Tremont-Morgan; Hannibal, Inc. dba Hannibal Pictures has suffered significant damages as a result of Sonja Tremont-Morgan's false

-16-

representations; Sonja Productions, LLC is a defunct company with little or no assets available to remedy Hannibal, Inc. dba Hannibal Pictures; Hannibal, Inc. dba Hannibal Pictures fulfilled its contractual obligations with Sonja Productions, LLC and Sonja Productions, LLC failed to fulfill its contractual obligations to Hannibal, Inc. dba Hannibal Pictures; the costs and expenses Hannibal, Inc. dba Hannibal Pictures has been forced to bear due reliance upon Sonja Productions, LLC and Sonja Tremont-Morgan's misrepresentations.

**Counter-Defendant**

Hannibal, Inc. dba Hannibal Pictures' affirmative defenses and defenses to Sonja Productions LLC's claims include failure to state a cause of action, unclean hands, estoppel, waiver, performance excused or prevented, comparative fault, contributory negligence, causation, failure to mitigate damages, lack of injury/damages, offset, and no loss of money or property.

The ultimate facts necessary to establish Hannibal, Inc. dba Hannibal Pictures' affirmative defenses and defenses to Sonja Productions LLC's claims are as follows:

1.   Failure to State a Cause of Action

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC breach of the Contract and Amendment by failing to provide proof of funds; Hannibal, Inc. dba Hannibal Pictures notification in writing to Sonja Productions LLC that the

services of John Travolta had been essentially secured; the understanding that before John Travolta would commit to the project he first require proof of funds; Hannibal, Inc. dba Hannibal Pictures did not intend to use any of the proof of funds to be provided by Sonja Productions LLC to produce other motion picture projects; Hannibal, Inc. dba Hannibal Pictures kept Sonja Tremont-Morgan apprised of the progress and developments related to the project; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

2.    Unclean Hands

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of

funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

3.   Estoppel

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

4.   Waiver

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00);

statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

5.   Performance Excused or Prevented

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; satisfaction of the condition precedent in the Contract by Hannibal, Inc. dba Hannibal Pictures in approximately early December 2006 that a deal with John Travolta was essentially concluded;  Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); John Travolta withdrawing his services when proof of funds was not timely provided by Sonja Productions.

6.   Comparative Fault

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta;

the cancelled reimbursement check by Sonja Productions LLC in the sum

of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00);

statements by Sonja Tremont-Morgan that failing to provide proof of

funds was somehow excused by her being served with divorce papers;

and statements by Sonja Tremont-Morgan that financing falling through

was a common occurrence in Hollywood.

      7.    Contributory Negligence

      The Contract and the Amendment for "Fast Flash to Bang Time"

between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions

LLC; Sonja Productions LLC's breach of the Contract and Amendment by

failing to provide proof of funds; Sonja Tremont-Morgan's repeated

representations that financing would be timely provided to Hannibal,

Inc. dba Hannibal Pictures to secure the services of John Travolta;

the cancelled reimbursement check by Sonja Productions LLC in the sum

of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00);

statements by Sonja Tremont-Morgan that failing to provide proof of

funds was somehow excused by her being served with divorce papers;

and statements by Sonja Tremont-Morgan that financing falling through

was a common occurrence in Hollywood.

      8.    Causation

      The Contract and the Amendment for "Fast Flash to Bang Time"

between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions;

Sonja Productions LLC's breach of the Contract and Amendment by

failing to provide proof of funds; Sonja Tremont-Morgan's repeated

representations that financing would be timely provided to Hannibal

HAMRICK & EVANS, LLP

Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

9.    Failure to Mitigate Damages

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

10.   Lack of Injury/Damages

The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; the lack of evidence of damages suffered by Sonja Productions LLC in entering in the Contract and Amendment with Hannibal, Inc. dba

Hannibal Pictures; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

    11.  Offset

    The Contract and the Amendment for "Fast Flash to Bang Time" between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

    12.  No Loss of Money or Property

    The Contract and the Amendment for "Fast Flash to Bang Time"

between Hannibal, Inc. dba Hannibal Pictures and Sonja Productions LLC; Sonja Productions LLC's breach of the Contract and Amendment by failing to provide proof of funds; Sonja Tremont-Morgan's repeated representations that financing would be timely provided to Hannibal, Inc. dba Hannibal Pictures to secure the services of John Travolta; the cancelled reimbursement check by Sonja Productions LLC in the sum of Fifty-Two Thousand and Ninety-Four Dollars ($52,094.00); statements by Sonja Tremont-Morgan that failing to provide proof of funds was somehow excused by her being served with divorce papers; and statements by Sonja Tremont-Morgan that financing falling through was a common occurrence in Hollywood.

**Defendants:**

Defendants Sonja Productions, LLC and Sonja Morgan's (collectively "Defendants") affirmative defenses and defenses to Hannibal Pictures, Inc.'s claims include condition precedent not met, assumption of the risk, contributory negligence, and unclean hands.

The ultimate facts necessary to establish Defendants' affirmative defenses and defenses to Hannibal's claims are as follows:

1.   Condition precedent not met

In a breach of contract action, "where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired." Consolidated World Investments, Inc. v. Lido Preferred Ltd. 9 Cal.App.4th 373, 380 (1992); Cochran v. Ellsworth, 126 Cal.App.2d

HAMRICK & EVANS, LLP

1    429, 440-441 (1954).

2        In this case, performance by SP was expressly conditioned upon

3    written confirmation that John Travolta would play the male lead in

4    Fast Flash.  This condition precedent was central to the Contract,

5    because SP needed the written confirmation that Travolta would play

6    the male lead to package the film and raise the funds to finance

7    the film from outside sources.  SP could not perform its

8    obligations under the Contract until it received written

9    confirmation that Travolta would play the male lead.

10       That condition precedent never occurred.  While Travolta

11   expressed interest in playing the male lead, he never provided

12   written confirmation to SP, nor did any representative of Travolta

13   provide such written confirmation to SP.  In fact, Travolta was only

14   willing to agree to play the male lead if SP and Hannibal agreed to

15   place his $6 million salary in escrow upon Travolta's signing of a

16   "pay or play" agreement that would have constituted written

17   confirmation.  SP could not comply with Travolta's demand, however,

18   because it needed SP's written confirmation before it could raise the

19   

20   necessary funds.

21       2.   Assumption of the Risk

22       When Hannibal Pictures, Inc. entered into the Contract with

23   Sonja Productions, LLC ("SP"), Hannibal knew or should have known

24   that there was a possibility that the parties would be unable to

25   secure written confirmation that John Travolta would play the male

26   lead.  Hannibal also knew or should have known that if the parties

27   did not obtain written confirmation that John Travolta would play the

28   

-25-

1   male lead, SP would be unable to package and market the picture

2   successfully, so as to raise the funds necessary to finance the

3   picture.   The consequence of such a failure would be that Hannibal

4   would not receive its fee, nor would it be entitled to recover any

5   expenses it incurred.

6       Hannibal assumed these risks in entering into the Contract, and

7   

8   is not entitled to recover damages that resulted from a risk of which

9   Hannibal was aware, and which Hannibal accepted.

10      3.   Contributory Negligence

11      Hannibal knew or should have known that SP did not have the

12   money to finance the film internally, but that SP intended to raise

13   the funds from external sources (including investors, investment

14   banks, tax credits, etc.).   As a result, Hannibal knew or should have

15   known during its negotiations with John Travolta that SP could not

16   

17   provide proof of funds in the amount of $6 million immediately upon

18   John Travolta signing a "pay or play" agreement.   Hannibal was

19   negligent in not advising John Travolta or his advisors of this, but

20   instead attempting to force Sonja Morgan to falsify bank records to

21   reflect the ability to provide proof of funds.   Hannibal was also

22   negligent in failing to ascertain the actual source of money from SP,

23   

24   and in representing to third parties that SP was founded by and

25   funded by John Adams Morgan, when, in fact, SP was founded by and

26   funded by Sonja Morgan.

27      4.   Unclean Hands

28          In this case, Hannibal engaged in numerous acts that give

HAMRICK & EVANS, LLP

-26-

rise to an unclean hands defense.  Hannibal encouraged SP to submit falsified bank records to John Travolta's representatives to misrepresent that SP had funds sufficient to meet Mr. Travolta's salary demand.  Hannibal also indicated that it would use these same documents to represent to outside investors that SP had the necessary funds to back Chasing the Dragon, a motion picture that SP had decided not to pursue.  Hannibal even went so far as to tell certain outside investors that SP had agreed to finance and produce Chasing the Dragon, despite the fact that SP had never entered into any agreement with respect to Chasing the Dragon.  This conduct illustrates Hannibal's unclean hands and bars recovery on Hannibal's complaint.

### 8.   <u>ULTIMATE ISSUES</u>:

In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

1.      **Breach of Contract**: the following elements of a claim for breach of contract remain to be tried: (a) Plaintiff's performance or excuse for nonperformance; (b) Defendant's breach; and (c) damage to Plaintiff.

2.      **Breach of Implied Covenant of Good Faith and Fair Dealing**: the following elements of a claim for breach of implied covenant of good faith and fair dealing remain to be tried: (a) the existence of the implied covenant of good faith and fair dealing in the contract; b) breach of the implied covenant of good faith and fair dealing; and (c) damage to Plaintiff.

HAMRICK & EVANS, LLP

3.    **Fraud**: the following elements of a claim for fraud remain to be tried: the false representations of material fact; (b) made with knowledge of falsity or without sufficient knowledge on the subject to warrant a representation; (c) with the intent to induce Plaintiff to whom they were made to act upon them; (d) and that Plaintiff acted in reliance upon the representation to its damage; and (e) damage to Plaintiff.

4.    **Negligent Misrepresentation**:  the following elements of a claim for negligent misrepresentation remain to be tried: (a) the negligent misrepresentations of material fact; (b) Defendants' lack of reasonable grounds for believing them to be true; (c) Defendants' intent to induce Plaintiff's reliance on Defendants' misrepresentations; (d) ignorance of the truth and justifiable reliance on Defendants' misrepresentations by Plaintiff; and (e) Plaintiff's resulting damage.

5.    **Unfair Business Practices**: the following element of a claim for unfair business practices remains to be tried: false and misleading representations within the meaning of California <u>Business & Professions Code</u> § 17200, et seq. and issues addressed in Fraud section above.

6.    **Alter Ego Liability**:  the following elements of a claim of alter ego liability remains to be tried: (a) such unity of interest and ownership that the separate personalities of Sonja Productions, LLC and Sonja Morgan no longer exist; and (b) whether the acts giving

HAMRICK & EVANS, LLP

rise to liability, if treated as those of the corporation alone, cause an inequitable result.

**9.   DISCOVERY:**

All discovery is complete.

**10.   JOINT EXHIBIT LIST:**

The Joint Exhibit List of the parties has been filed herewith under separate cover as required by L.R. 9.7.  All Exhibits may be admitted without objection, except those listed below:

Plaintiff and Counter-Defendant objects to Exhibit Nos. None.

Defendant objects to Exhibit Nos. None.

The objections and grounds thereto are separately stated and attached hereto.

**11.   WITNESS LISTS:**

Witness lists of the parties have heretofore been filed with the Court.  Except for good cause shown only the witnesses identified in the lists will be permitted to testify (other than for impeachment or rebuttal).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16.2.7. For this purpose, the following depositions shall be lodged with the clerk as required by L.R. 32-1:  James Adams Morgan.

**12.   LAW AND MOTION/MOTIONS IN LIMINE:**

The following law and motion matters and motions in limine, and no others, are pending or contemplated:  None.

**13.   BIFURCATION:**

1   Bifurcation of the following issues for trial is ordered:  None.

2   **14.   SUPERSEDING ORDER:**

3       The foregoing admissions have been made by the parties, and the

4   parties having specified the foregoing issues of fact and law

5   remaining to be litigated, this pre-trial conference order shall

6   supersede the pleadings and govern the course of the trial of this

7   cause, unless modified to prevent manifest injustice.

8

9

10  Dated:   ~~April 30, 2009~~   5/11/09

11

12                          The Honorable George H. King
                            Judge, United States District Court

13      **APPROVED AS TO FORM AND CONTENT**

14  Dated:  April 30, 2009          HAMRICK & EVANS, LLP

15

16  By_____

17                          A. RAYMOND HAMRICK, III
                            MARTIN J. BARAB

18                          Attorneys for Plaintiff and
                            Counter-Defendant HANNIBAL

19                          PICTURES, INC., a California
                            Corporation

20

21  Dated:  April 30, 2009          BROWNE, WOODS & GEORGE LLP

22

23  By_____

24                          ERIC M. GEORGE
                            GENE WILLIAMS

25                          Attorney for Defendants SONJA
                            PRODUCTIONS LLC, SONJA TREMONT-

26                          MORGAN, and Counter-Claimant SONJA
                            PRODUCTIONS, LLC

27

28

HAMRICK & EVANS, LLP