ORIGINAL

1  Max J. Sprecher, Esq. (SBN: 169285)
   LAW OFFICES OF MAX J. SPRECHER
2  5850 Canoga Avenue, 4th Floor
   Woodland Hills, CA 91367
3  P: 818.996.2255
   F: 818.996.4204
4  E-Mail: max@sprecherlaw.com

5  Attorneys for Defendants
   RICHARD RIONDA DEL CASTRO (erroneously sued as
6  RICHARD RIONDA DEL CASTRO dba HANNIBAL PICTURES,
   HANNIBAL PICTURES, INC., and MARCO POLO PRODUCTION SARL)
7  and HANNIBAL, INC.

FILED
LOS ANGELES SUPERIOR COURT

DEC 03 2007

JOHN A. CLARKE, CLERK
BY SHAUNYA WESLEY, DEPUTY

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

| | |
|---|---|
| 11  OLGA LEVENS and JASON LEVENS doing business as LEVENS ENTERTAINMENT, <br>12 <br>  Plaintiffs, <br>13 <br>  vs. <br>14 <br>  RICHARD RIONDA DEL CASTRO, <br>15  individually and dba HANNIBAL PICTURES, HANNIBAL PICTURES INC., MARCO POLO <br>16  PRODUCTION SARL; HANNIBAL INC., a California Corporation, and DOES 1-10, <br>17  inclusive, <br>18  Defendants. | Case No.   BC380149 <br> Filed:    November 2, 2007 <br> Assigned:  Dept 54 <br>           Hon. Ernest Hiroshige <br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD RIONDA DEL CASTRO** <br><br>Date: January 16, 2007 <br>Time: 8:30 a.m. <br>Dept: 54 |

19

20 **TO THIS HONORABLE COURT AND TO PLAINTIFFS AND THEIR COUNSEL OF**

21 **RECORD HEREIN:**

22      PLEASE TAKE NOTICE that on January 16, 2007, at 8:30 a.m., in Department 54 of the

23 above-captioned Court located at 111 N. Hill Street, Los Angeles, California, Defendants Hannibal

24 Inc. and Richard Rionda Del Castro ("Rionda") will and hereby do move for an order compelling

25 Plaintiffs to proceed by arbitration as to each of the claims asserted in the Complaint filed on

26 November 2, 2007.

27

28

---

                                        1                          Case No. BC380149
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

**EXHIBIT E**
**PAGE 42**

Defendants further move for an order staying this action pursuant to Cal. Code of Civ. Proc. §1281.4.

This motion is brought on the grounds that:

1. Plaintiffs specifically allege the existence of a written agreement between Plaintiffs and one of the defendants;[1]

2. Plaintiffs specifically allege that the written agreement forms the basis for each of their claims, i.e., breach of contract and breach of fiduciary duty based upon the contractual relationship; and,

3. The agreement specifically incorporates the AFMA Standard Terms and Conditions which, in turn, includes a mandatory arbitration clause.

Defendants' motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities in support thereof, the declaration of Richard Rionda Del Castro attached hereto, and upon such further evidence and argument as may be submitted and considered by the Court.

DATED: November 30, 2007

LAW OFFICES OF MAX J. SPRECHER
MAX J. SPRECHER

_____
Max J. Sprecher
Attorney for Defendants

---

[1] Plaintiffs have erroneously named Rionda individually as the contracting defendant and also erroneously assert that Rionda (the individual) is "doing business as" Hannibal Pictures, Hannibal Pictures, Inc. and Marco Polo Production SARL. Although the only appropriate defendant is Hannibal, Inc. (dba Hannibal Pictures), these issues are irrelevant to this motion for the simple reason that regardless of which defendant contracted with Plaintiffs, the contract requires arbitration.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs pursue this action in the wrong forum.

The Complaint asserts only two claims: (1) breach of a written sales agency contract and (2) breach of fiduciary duty arising from the sales agency contract. However, the sales agency contract attached to the Complaint repeatedly refers to and incorporates a document identified as the "Standard Terms and Conditions." These references are to the American Film Market Association ("AFMA") Standard Terms and Conditions, a form commonly and widely used by independent producers, distributors, and sales agents. Section 18.5 of the Standard Terms and Conditions specifically and unambiguously requires arbitration. By filing this civil action, Plaintiffs have refused to arbitrate. Defendants request that the Court order Plaintiffs to proceed with AFMA arbitration as required by the sales agency contract.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE COMPLAINT - PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Richard Rionda Del Castro ("Rionda"), using the name "Hannibal Pictures," entered into a motion picture sales agency contract with Plaintiffs for the motion picture "Haunted Boat." Complaint, ¶¶1, 12 and 17. Plaintiffs further allege that in providing the sales agency services, Rionda also used the names "Hannibal Pictures, Inc." and "Marco Polo Production SARL." Complaint, ¶3 (Plaintiffs refer to Rionda and the purportedly "fictitious" entities as HANNIBAL). Plaintiffs also allege that in collecting fees from buyers, Rionda used accounts belonging to Defendant Hannibal, Inc. although it was not otherwise listed on the distribution agreements. Complaint, ¶4.

Plaintiffs allege that HANNIBAL (*i.e.*, Rionda and the "fictitious" entities) has failed and refused to perform as required under the sales agency contract, has failed to properly and fully account, and has refused to provide requested information. Complaint, ¶¶7-10 and 20. In a catch-

all effort to capture all possible permutations, Plaintiffs also allege alter ego and conspiracy between and among the two named defendants and the "fictitious" entities. Complaint, ¶¶15 & 21.[2]

Based upon the general allegations, Plaintiffs assert two causes of action: (1) breach of contract and (2) breach of fiduciary duty.

B.   THE WRITTEN AGREEMENT – DEFENDANTS' CONTENTIONS

The sales agency contract repeatedly incorporates a document referenced as the "Standard Terms and Conditions." In paragraph C ("Grant of Rights" section of the sales agency contract), the document states that the rights granted included "all incidental rights pertaining thereto necessary to allow Hannibal the full exercise of the Acquired Rights *as more fully set forth in Schedule 1, Standard Terms and Conditions, referred to herein and made a part hereof by this reference*." (Emphasis added.) Complaint, Exhibit A and Rionda Decl., ¶¶5-6 and Exhibit A hereto. This same paragraph goes on to define the Acquired Rights to include various defined categories "according to the American Film Marketing Association Motion Picture Registry Standard Definitions." *Ibid.* Finally, Paragraph K states that "[t]he balance of the terms and conditions of this Agreement shall be in accordance with the following additional riders attached hereto which include Schedule 1-Standard Terms and Conditions; Exhibit 'A' – Delivery Schedule." *Ibid.* These are clear statements of the parties' intent to incorporate the Standard Terms and Conditions.

Finally, Section 18.5 of the Standard Terms and Conditions provides:

> 18.5 Arbitration: Any dispute under this Agreement will be resolved by final and binding arbitration under the Rules For International Arbitration of the American Film Marketing Association in effect when the arbitration is filed (the "AFMA Rules"). Each Party waives any right to adjudicate any dispute in any other court or forum, except that a Party may seek interim relief before the start of

---

[2] Defendants will address the deficiencies in the Complaint, such as the legal inability of a person to conspire with himself, if the Court denies this motion and Defendants are required to respond to the Complaint. Cal. Code of Civ. Proc. §1281.7.

arbitration as allowed by the AFMA Rules. The arbitration will be held in the Forum designated in this Agreement, or, if none is designated, as determined by the AFMA Rules. The Parties will abide by any decision in the arbitration and any court having jurisdiction may enforce it. The Parties submit to the jurisdiction of the courts in the Forum to compel arbitration or to confirm an arbitration award. The Parties agree to accept service of process in accordance with the AFMA Rules.

C. PLAINTIFFS' CONFUSION AS TO THE CORRECT DEFENDANT PARTIES IS IRRELEVANT TO THIS MOTION

As described above, Plaintiffs named Richard Rionda Del Castro as the primary defendant and contracting party -- individually and purportedly doing business under the names "Hannibal Pictures," "Hannibal Pictures, Inc.," and "Marco Polo Production SARL". Complaint, ¶¶1 and 12. Plaintiffs then assert that Hannibal, Inc. may be responsible because Rionda appears to have used it to receive funds from buyers. Finally, Plaintiffs allege alter ego between and among Rionda, the purportedly "fictitious entities" and Hannibal, Inc.

Defendants are confident that the facts eliminate any basis to name any entity other than Hannibal, Inc. (incorporated in 1999 and doing business as Hannibal Pictures) because the erroneous references to Hannibal Pictures or Hannibal Pictures, Inc. reflect nothing more the scrivener's errors. Rionda Decl., ¶¶2 and 4. Regardless and more importantly, Plaintiffs cannot avoid arbitration under the express terms of the sales agency contract by asserting any dispute or confusion as to which Defendant is the correct Defendant. First, there is no dispute that Plaintiffs are contracting parties. Second, regardless of which Defendant is the correct contracting party, Plaintiffs premise the complaint on the existence of that contract. Third, Plaintiffs (incorrectly) allege that Rionda (the individual) is the contracting party. Thus, if Plaintiffs' allegations are correct, Rionda can compel arbitration. Finally, even if Plaintiffs are wrong in naming Rionda, and Hannibal, Inc. is the correct contracting party (as contended by Defendants), then Hannibal, Inc. is entitled to compel arbitration.

## III. ARGUMENT

### A. THE LAW

No dispute exists that "arbitration has become an accepted and favored method of resolving disputes ... praised by the courts as an expeditious and economical method of relieving overburdened civil calendars." *Madden v. Kaiser Found. Hosps.* (1976) 17 Cal.3d 699, 706-707. Moreover, pursuant to the express terms of Cal. Code of Civ. Proc. §1281.2, a party to an arbitration agreement may seek a court order compelling the parties to arbitrate a dispute covered by the agreement and pursuant to Cal. Code of Civ. Proc. §1281.7 such a request may be filed in lieu of the initial response.

Recognizing the public policy favoring arbitration, the Court must grant a motion by any party to a written arbitration agreement unless it finds a waiver, grounds existing to revoke the agreement, or other pending litigation that could lead to inconsistent rulings. Cal. Code of Civ. Proc. §1281.2. Finally, the "agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference." *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co. of Maryland* (1992) 6 Cal.App.4th 1266, 1271 (surety compelled to arbitrate claim brought by obligee where surety document incorporated contract between contractor and obligee which contained arbitration clause); *King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 353 (salesman compelled to arbitrate claim where application incorporated bylaws that included arbitration clause).

Based upon the facts before the Court, Defendants meet their burden of proof by establishing that the written agreement identified by Plaintiffs incorporated a specific document and that document – Standard Terms and Conditions – requires arbitration.[3] The burden thus shifts to Plaintiffs to establish either the non-existence of an agreement to arbitrate or some substantive grounds for denial, such as fraud in procuring the arbitration agreement. *Rosenthal v. Great Western Fin'l Securities Corp.* (1996) 14 Cal.4th 394, 413.

---

[3] Plaintiffs cannot dispute that all of their claims fall within the scope of the arbitration clause.

### B. THE DISPUTES ARE THE SUBJECT OF A WRITTEN AGREEMENT THAT INCLUDES AN ARBITRATION CLAUSE

Plaintiffs cannot dispute that the sales agency contract (Exhibit A) forms the underlying basis for their entire complaint in which Plaintiffs assert nothing more than that Defendants breached the written contract (Complaint, ¶¶23-24) and that Defendants breached their alleged fiduciary duty as Plaintiffs' sales agent (again, a relationship arising directly from and governed by the written contract).

Plaintiffs also cannot dispute that the written contract attached to the Complaint refers to and incorporates the "Standard Terms and Conditions." More importantly, the references to the "Standard Terms and Conditions" are clear and unambiguous in light of the other references to standard AFMA materials, as well as the widespread and common use of the AFMA Standard Terms and Conditions by independent film makers, distributors, and sales agents. Finally, Rionda testifies that the reference in the sales agency contract is to the AFMA Standard Terms and Conditions that include the arbitration clause. Rionda Decl., ¶7. Rionda's testimony is appropriate and admissible to prove the meaning of the reference in the sales agency contract.

Based upon the mandatory arbitration clause applicable to the sales agency relationship, Plaintiffs should be ordered to proceed with arbitration against the contracting party, i.e., Hannibal, Inc. dba Hannibal Pictures.

### C. THE COURT SHOULD ALSO ENTER AN ORDER STAYING THIS ACTION DURING THE PENDENCY OF THE ARBITRATION

An order staying an action is appropriate where litigation is pending and the Court grants an order compelling arbitration. Cal. Code of Civ. Proc. §1281.4; *Twentieth Century Fox Film Corp. v. Sup. Ct.* (2000) 79 Cal.App.4th 188, 192. The mandate for a stay is even more significant where there are multiple defendants, some of whom may not be parties to the arbitration, but the arbitration may affect the defenses available to such defendants. *Marcus v. Superior Court*, 75 Cal.App.3d 204 (1977).

In *Marcus,* the plaintiff purchased a franchise. When the franchisee lost money, the franchisee sued the franchisor and several of the franchisor's officers for fraud and alter ego claims.

1 | The trial court granted the franchisor's motion to compel arbitration but denied the executive's
2 | separate motion to stay. At the direction of the California Supreme Court, the Court of Appeal
3 | issued an alternative writ overruling the trial court. The *Marcus* Court stated: "The clear language
4 | of the statute compels the conclusion that any party to a judicial proceeding, whether a party to an
5 | arbitration agreement or not, is entitled to a stay of those proceedings whenever (1) the arbitration
6 | of a controversy has been ordered, and (2) that controversy is also an issue involved in the pending
7 | judicial action. It is irrelevant under the statute whether the movant is a party to the arbitration
8 | agreement." *Id.* at 209.

9 | As to the *Marcus* plaintiff's objection that he should be allowed to proceed against the non-
10 | arbitrating parties, the Court of Appeal held that even though the arbitrator may not be able to rule
11 | on the absent parties rights (e.g., the personal liability of various officers), the stay was mandated
12 | because, as would be applicable to this case:

> Any finding by the arbitrator that the corporation is not liable will significantly limit the issues subject to determination in a subsequent judicial action. ***A finding by the arbitrator that no tort was committed and therefore that no corporate liability exists would be binding on real party*** [i.e., plaintiff in the instant action] ***in a subsequent suit seeking to establish liability on the part of petitioners***.

20 | *Id.* at 212 (emphasis added; citations omitted).

21 | Section 1281.4 and *Marcus* mandate a complete and immediate stay in this action. As in
22 | *Marcus*, no legitimate dispute exists that arbitration is appropriate (and pending) between the two
23 | contracting parties, *i.e.,* Plaintiffs and one of the Defendants. Second, as in *Marcus*, regardless of
24 | which Defendants are the appropriate parties to the arbitration, Plaintiffs must first establish
25 | liability based upon the sales agency contract -- an issue first to be presented to the Arbitrator --
26 | before secondary liability can be imposed.

27 | Thus, to the extent the Court grants this motion and compels arbitration, Defendants request
28 | that the order stay all further proceedings during the pendency of such arbitration.

IV. **CONCLUSION**

Regardless of which Defendant is the contracting party, this action is subject to arbitration pursuant to the express terms of a written agreement. Plaintiffs must proceed with arbitration before seeking further relief from this Court.

DATED: November 30, 2007

LAW OFFICES OF MAX J. SPRECHER
MAX J. SPRECHER

_____
Max J. Sprecher
Attorney for Defendants



**RIONDA DEL CASTRO DECLARATION**

**EXHIBIT E
PAGE 51**

# DECLARATION OF RICHARD RIONDA DEL CASTRO

I, RICHARD RIONDA DEL CASTRO, declare and say that:

1. I am one of the principal shareholders, CEO, and President of Hannibal, Inc. (dba Hannibal Pictures). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. Hannibal, Inc. ("Hannibal") was formed in 1999 and is the only entity through which I conduct business as a motion picture sales agent. On various occasions, Hannibal, Inc. and its employees have mistakenly identified Hannibal, Inc. in some documents as Hannibal Pictures, Inc. However, no such entity has ever existed, and all business is conducted solely through Hannibal, Inc. and its formal dba Hannibal Pictures.

3. Hannibal is a theatrical motion picture producer, distributor, and independent foreign sales agent representing theatrical motion pictures throughout the world. As such, Hannibal is in the business of, among other things, acquiring distribution rights (which it may resell) and representing motion pictures for sales on behalf of other producers.

4. Marco Polo Production SARL ("Marco Polo") is a corporate entity formed and existing under the laws of France. Hannibal, Inc. owns 85% of Marco Polo, and I own the remaining 15%. I am also the Gerant (e.g., CEO) of Marco Polo. On occasion, European buyers have asked to tender payment within the European Union for their own internal tax purposes. As a courtesy, Hannibal has arranged for such buyers to make payment through Marco Polo, which then transfers payment to Hannibal without fee or deduction.

5. On or about May 5, 2007, Hannibal Pictures (i.e., Hannibal, Inc.'s dba) entered into a sales agency agreement with Olga and Jason Levens dba Levens Entertainment. A copy of this agreement was attached to the Complaint as Exhibit A, and a true and correct copy is also attached hereto as Exhibit A for the Court's convenience.

6. Paragraph K of the sales agency agreement states as follows: "The balance of the terms and conditions of this Agreement shall be in accordance with the following additional riders attached hereto which include Schedule 1 - Standard Terms and Conditions; Exhibit 'A' - Delivery Schedule. The terms and conditions of this Agreement shall supersede any conflicting terms or

conditions in the riders attached hereto." Similarly, Paragraph C of the sales agency agreement states that the Standard Terms and Conditions are "made a part hereof by this reference."

7. The "Standard Terms and Conditions" referenced in the preceding paragraph refer to the American Film Market Association (now known as the International Film and Television Alliance and the organizer of the annual American Film Market in Santa Monica) Standard Terms and Conditions, a form prepared by AFMA that is in widespread and common use among almost all independent film makers, distributors, buyers, and sales agents. The Standard Terms and Conditions are highly useful because of its broad application to almost all contracts in which motion picture rights may be at issue, including both acquisitions and sales. In addition, the arbitration clause is a significant tool in the independent film business because it provides a consistent method for resolving disputes quickly, inexpensively, and within an international community of agents, buyers and sellers located around the world. In fact, one of the significant remedies under an AFMA arbitration is that the loser is precluded from the annual film market until an award is satisfied -- creating a significant incentive for resolving disputes and obtaining recovery. Thus, from its inception, Hannibal has consistently used this form (as revised on occasion by AFMA) in its dealings with producers as a sales agent, in its acquisitions, and in its sales activity with buyers. Attached hereto as Exhibit B is a true and correct copy of the Standard Terms and Conditions used by Hannibal in 2005.

8. Paragraph 18.5 of the Standard Terms and Conditions provide as follows:

> "Any dispute under this Agreement will be resolved by final and binding arbitration under the Rules For International Arbitration of the American Film Marketing Association in effect when the arbitration is filed (the "AFMA Rules"). Each Party waives any right to adjudicate any dispute in any other court or forum, except that a Party may seek interim relief before the start of arbitration as allowed by the AFMA Rules. The arbitration will be held in the Forum designated in this Agreement, or, if none is designated, as determined by the AFMA Rules. The Parties will abide by any decision in the arbitration and any court having jurisdiction may enforce it. The Parties submit to the jurisdiction of the courts in the Forum to compel arbitration or to confirm an arbitration award. The Parties agree to accept service of process in accordance with the AFMA Rules."

9. As described in the Complaint, disputes presently exist between Plaintiffs and Hannibal concerning issues arising under the sales agency agreement. Although I deny that I have any directly responsibility or liability, Plaintiffs clearly and unambiguously allege the existence of the contract which incorporates the mandatory arbitration clause.

10. In particular, except for Plaintiffs' allegations as to the identity of the defendants, all of the allegations are premised on the subject contract.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed on this 28th day of November, 2007, at Los Angeles, California.

Richard Rionda Del Castro

**EXHIBIT E**
**PAGE 54**

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 5850 Canoga Ave., 4th Floor, Woodland Hills, CA 91367. On November 30, 2007, I served the within document(s) described as:

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD RIONDA DEL CASTRO**

on the interested parties in this action as stated on the attached mailing list.

[X] (BY MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in affidavit.

[ ] (BY EXPRESS MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and overnight mailing following ordinary business practices. I am readily familiar with this firm's practice for collection and processing of Express Mail to be sent overnight by the U.S. Postal Service. Under that practice, it would be deposited on that same day in the ordinary course of business, with Express Mail postage thereon fully prepaid, in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the U.S. Postal Service for receipt of Express Mail.

[ ] (BY FAX) By transmitting a true copy of the foregoing document(s) via facsimile transmission from this firm's facsimile machine, to each interested party at the facsimile machine telephone number(s) set forth on the attached mailing list. Said transmission(s) were completed on the aforesaid date at the time stated on the transmission record issued by this firm's sending facsimile machine. Each such transmission was reported as complete and without error and a transmission report was properly issued by this firm's sending facsimile machine for each interested party served. A true copy of each transmission report is attached to the office copy of this proof of service and will be provided upon request.

[ ] (BY E-MAIL) By transmitting a true copy of the foregoing document(s) to the e-mail addresses set forth on the attached mailing list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 30, 2007, at Woodland Hills, California.

_____Mila Vozovoy_____   _____/s/ Mila Vozovoy_____
(Type or print name)                  (Signature)

1

**EXHIBIT E**
**PAGE 55**

1 | **SERVICE LIST**

2 | Richard L. Albert, Esq.
Law Offices of Richard L. Albert
3 | 4605 Lankershim Boulevard, Suite 203
North Hollywood, CA 91602
4 | Facsimile: (818) 752-7471
Email: rick@albertlawoffices.com

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT E**
**PAGE 56**